## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAUL FARINAS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  14-1272** |
| **LA. DPT. OF CORRECTIONS** | **SECTION "C"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Paul Farinas ("Farinas"), is a convicted inmate currently incarcerated in the Orleans Parish Prison.[2]  On May 5, 2005, Farinas was indicted in Jefferson Parish for the second degree murder of his wife, Delinda Amos Farinas.[3]  Farinas initially entered a plea of not guilty to the charge on May 6, 2005.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 4.

[3] St. Rec. Vol. 1 of 7, Indictment, 5/5/05; Grand Jury Return, 5/5/05.

[4] St. Rec. Vol. 1 of 7, Minute Entry, 5/6/05.

The record reflects that, at 6:46 a.m. on September 3, 2004, Jefferson Parish Sheriff's Deputies received a 911 call from the home at 434 Bruce Avenue in Terrytown.[5]  When the deputies arrived, they saw no signs of forced entry.  The nude body of the victim, Delinda Farinas, was lying in a bathtub filled with water.  Her face, including her mouth and nose, were above the water line, and her head was resting on the back of the bathtub.

Sergeant Donald Meunier, who arrived at the home around 8:30 a.m., noticed a pinkish, frothy discharge coming from Delinda's mouth and nose.  A curling iron was cupped in her hand, which rested on her pelvic bone partially under the water.  When the other deputies arrived earlier, the cord of the curling iron was attached to an extension cord that was plugged into a wall socket.  By the time Sergeant Meunier arrived, another deputy had unplugged the cord from the wall.  A cloth curler used to roll hair was clipped to the back of Delinda's head with other curlers nearby in the bathroom. A mirror was propped against the toilet and angled toward the bathtub.

At the time the incident was reported, there were five children in the home.  Sergeant Meunier, assisted by child protective services, eventually took video statements from Delinda's eleven-year-old son and eight-year-old daughter, who were Farinas's stepchildren.  The son told the Sergeant that Farinas knew that Delinda was planning to leave him.  The daughter added that, the night of her mother's death, she awakened to hear yelling because her mother and Farinas were arguing in the hallway.  She said that she heard her mother pleading with Farinas to put down the gun.  She looked into the hallway from her bedroom and could see that Farinas was holding a handgun.

---

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on appeal. *State v. Farinas*, 28 So. 3d 1132, 1136-37 (La. App. 5th Cir. 2009); St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 09-KA-396, pp. 6-8, 11/24/09.

Sergeant Meunier also learned that Farinas had been at the home that morning before he arrived.  He also spoke with Robert Johnson, who had been having an affair with Delinda.  Johnson told Sergeant Meunier that he suspected Farinas had killed Delinda, a statement the detective initially dismissed as based in anger.  Johnson also told the deputies that Delinda intended to separate and ultimately divorce Farinas, and that she had either secured or was in the process of securing an apartment on the Westbank.  The deputies went to that apartment complex and confirmed that Delinda had filled out an application two days before her death, requesting occupancy as soon as possible.

Six weeks after his wife's death, Farinas gave a statement to Sergeant Meunier after waiving his *Miranda* rights.  He stated that he left their residence at 1:30 a.m. to go to work.  He also stated that Delinda was pouring a second bath when he left.

Previously, a neighbor told Sergeant Meunier that, at about 5:30 a.m. on the morning of Delinda's death, she saw Farinas from her bedroom window which is located at the front of her house and looks out onto the street.  She heard the revving of an engine on a large truck and saw Farinas seated in the truck for several minutes.  The engine noise caused the windows in her room to rattle.  She considered going outside to approach Farinas but he pulled off before she could do so.

Dr. Karen Ross conducted the autopsy and declared Delinda's death to be a homicide.  The cause of death was attributed to drowning and strangulation, but Dr. Ross could not rule out electrocution.  Because of the definite evidence of drowning and strangulation, she ruled Delinda's death to be the result of homicidal violence.

On June 19, 2006, Farinas withdrew his former plea and, pursuant to a plea agreement, entered a plea of guilty to the amended charge of manslaughter.[6]  In accordance with the agreement, the Trial Court sentenced Farinas to serve thirty (30) years in prison at hard labor.[7]

Two years later, on June 17, 2008, Farinas submitted an application for post-conviction relief to the Trial Court claiming that he was factually and actually innocent where the State's evidence did not establish that he was the killer, and he received ineffective assistance of counsel for which he offered no explanation.[8]  The Trial Court denied relief on June 30, 2008, finding the claims to be factually inaccurate, legally meritless under *Hill v. Lockhart*, 474 U.S. 52 (1985), and otherwise unsupported by the record.[9]  The court also noted that Farinas had not filed an appeal leaving the claims unexhausted in the proper forum.

That same day, the clerk of the state trial court received and filed a letter from Farinas seeking to expand on his post-conviction claim of ineffective assistance of counsel.[10]  He argued therein that his retained counsel failed to adequately investigate and prepare a plausible defense and failed to interview witnesses, and  that counsel failed to maintain his professional standing through required continued legal education.  The court denied relief on the amended arguments on July 10,

---

[6]St. Rec. Vol. 4 of 7, Plea Minutes, 6/19/06; Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights Upon Entry of a Plea of Guilty, 6/19/06; St. Rec. Vol. 3 of 7, Plea Transcript, pp. 7-8, 6/19/06; St. Rec. Vol. 1 of 7, Indictment, handwritten amendment dated 6/19/06.

[7]St. Rec. Vol. 4 of 7, Plea Minutes, 6/19/09; St. Rec. Vol. 3 of 7, Plea Transcript, p. 8, 6/19/06.

[8]St. Rec. Vol. 3 of 7, Application for Post-Conviction Relief, 6/23/08 (dated 6/17/08).

[9]St. Rec. Vol. 3 of 7, Trial Court Order, 6/30/08.

[10]St. Rec. Vol. 3 of 7, Brief in Support, 6/30/08 (undated).

2008, finding that Farinas failed to meet the standards set forth under *Strickland v. Washington*, 466 U.S. 668 (1984), and related case law.[11]

After notifying the Trial Court of his intent to seek review of these rulings,[12] Farinas also submitted to the Trial Court an application for leave to file an out-of-time appeal based on the Trial Court's denial of the application for post-conviction relief.[13]  The court denied relief on August 19, 2008, finding that Farinas had already pursued post-conviction relief, had failed to submit the proper form, and was untimely in seeking post-conviction relief under La. Code Crim. P. art. 930.8.[14]

On September 27, 2008, Farinas timely[15] submitted a writ application to the Louisiana Fifth Circuit asserting factual innocence and ineffective assistance of counsel and seeking review of the Trial Court's June 30, 2008, denial of his application for post-conviction relief.[16]  The Louisiana Fifth Circuit granted the application on December 23, 2008, directing the Trial Court to allow Farinas to amend the motion for an out-of-time appeal to bring it into compliance with Louisiana procedural rules and to allow the State to respond to the request.[17]

---

[11]St. Rec. Vol. 3 of 7, Trial Court Order, 7/10/08.

[12]St. Rec. Vol. 3 of 7, Notice of Intent, 7/22/08; Trial Court Order, 7/28/08 (setting return for 9/29/08); Motion for Extension, 9/19/08; Trial Court Order, 9/23/08 (extending return to 10/31/08).

[13]St. Rec. Vol. 3 of 7, Application for Out-of-Time Appeal, 8/7/08 (dated 7/31/08).

[14]St. Rec. Vol. 3 of 7, Trial Court Order, 8/19/08.

[15]St. Rec. Vol. 3 of 7, Notice of Intent, 7/22/08; Trial Court Order, 7/28/08 (setting return 9/29/08); Motion for Extension, 9/19/08; Trial Court Order, 9/23/08 (extending return to 10/31/08).

[16]St. Rec. Vol. 7 of 7, 5th Cir. Writ Application, 08-KH-822, 10/10/08 (postmarked 9/29/08, dated 9/27/08).

[17]St. Rec. Vol. 7 of 7, 5th Cir. Order, 08-KH-822, 10/23/08.

On January 14, 2009, the Trial Court without further briefing reconsidered and granted Farinas's prior motion for an out-of-time appeal and appointed counsel to file the appeal.[18] Thereafter, on January 21, 2009, Farinas submitted another application for post-conviction relief requesting the out-of-time appeal, which had already been granted.[19]

On direct appeal, Farinas's appointed counsel asserted that the Trial Court erred in accepting the plea as knowing and voluntary when it failed to explain the constitutional rights and the charge of manslaughter before accepting the plea.[20]   Farinas requested and was granted leave to file a *pro se* supplemental brief, and no such brief was ever filed.[21]   The State, in addition to its reply brief, filed a motion to dismiss the appeal because his request was untimely and the 2008 writ application did not challenge the Trial Court's denial of the out-of-time appeal.[22]

In its opinion issued November 24, 2009, the Louisiana Fifth Circuit denied the motion to dismiss, and affirmed the conviction and sentence.[23]   The court found that Farinas was fully advised of the nature of the charge and that he voluntarily and knowingly waived his constitutional rights as required under *Boykin v. Alabama*, 395 U.S. 238 (1969).

---

[18]St. Rec. Vol. 3 of 7, Trial Court Order, 1/14/09.

[19]St. Rec. Vol. 3 of 7, Application for Post-Conviction Relief, 1/26/09 (dated 1/21/09).

[20]St. Rec. Vol. 6 of 7, Appeal Brief, 2009-KA-0396, 6/22/09.

[21]St. Rec. Vol. 6 of 7, Leave to File Pro Se Brief, 09-KA-0396, 7/8/09; 5th Cir. Order, 09-KA-396, 7/8/09.

[22]St. Rec. Vol. 6 of 7, Motion to Dismiss Appeal, 09-KA-0396, 8/13/09.

[23]*Farinas*, 28 So. 3d at 1132; St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 09-KA-396, 11/24/09.

On June 25, 2010, the Louisiana Supreme Court denied without stated reasons Farinas's *pro se* writ application seeking review of the out-of-time appeal.[24]  His conviction and sentence became final ninety (90) days later, on September 23, 2010, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (finding that the period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (holding state conviction is final at the conclusion of the out-of-time appeal).

Almost nine (9) months later, on June 20, 2011, Farinas submitted to the Trial Court an application for post-conviction relief asserting that he was denied effective assistance of counsel when he entered the guilty plea.[25]  He argued that counsel should have recognized the insufficient evidence to support the charge and that a viable defense of reasonable doubt existed.  In addition, had he proceeded to trial, he could have cross-examined and impeached the State's witnesses and challenged the cause of death as a suicide or accidental death.

While that application was pending, on February 17, 2012, Farinas also filed a motion to amend or modify his sentence because of his rehabilitative efforts while in prison.[26]  The Trial Court denied the motion for seeking untimely relief under La. Code Crim. P. art. 881.[27]

---

[24]*State v. Farinas*, 38 So.3d 335 (La. 2010); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2010-KO-0086, 6/25/10; La. S. Ct. Writ Application, 10-KO-86, 1/14/10 (postal metered 12/23/09, dated 12/22/09); St. Rec. Vol. 3 of 7, La. S. Ct. Letter, 2010-K-86, 1/14/10.

[25]St. Rec. Vol. 3 of 7, Application for Post-Conviction Relief, 6/22/11 (dated 6/20/11).

[26]St. Rec. Vol. 3 of 7, Motion to Amend or Modify Sentence, 2/23/12 (dated 2/17/12).

[27]St. Rec. Vol. 3 of 7, Trial Court Order, 3/15/12.

Later, after receiving a response from the State, the Trial Court denied the application for post-conviction relief on May 14, 2012, finding it to be impermissibly repetitive and successive of the application filed in 2008.[28]

Farinas filed an untimely[29] writ application in the Louisiana Fifth Circuit arguing that his application was not repetitive or successive in light of his out-of-time appeal and urged the court to consider his ineffective assistance of counsel claim where counsel failed to advise him of the possibility that reasonable doubt, or suicide or accidental death, was a viable defenses to the second degree murder charge.   The Louisiana Fifth Circuit, on December 7, 2012, denied Farinas's ineffective assistance of counsel claim as meritless under the standards set forth in *Strickland* and its progeny.[30]   On May 24, 2013, the Louisiana Supreme Court denied without stated reasons Farinas's related writ application in which he asserted that his counsel was ineffective where he failed to recognize an obvious defense and explore the weaknesses in the State's case.[31]

## II.   Federal Petition

After an extended delay for Farinas to correct deficiencies in his petition, the Clerk of this Court, on July 8, 2014, filed his federal petition for habeas corpus relief in which he asserted the following grounds for relief:[32] (1) his plea was not voluntarily entered where (a) the Trial Court did

---

[28]St. Rec. Vol. 3 of 7, Trial Court Order, 5/14/12; Trial Court Order, 3/12/12; State's Response, 4/10/12.

[29]Under La. App. R. 4-3, petitioner had 30 days from issuance of the lower court's order to file a writ application, which he did not do and the record contains no indication that the time period was extended.

[30]St. Rec. Vol. 7 of 7, 5th Cir. Order, 12-KH-801, 12/7/12; 5th Cir. Writ Application, 12-KH-801, 10/19/12 (postmarked 10/16/12, dated 10/15/12).

[31]*State ex rel. Farinas v. State*, 117 So. 3d 99 (La. 2013); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2013-KH-0062, 5/24/13; La. S. Ct. Writ Application, 13-KH-0062, 1/8/13 (postal metered 1/3/13, dated 1/3/13).

[32]Rec. Doc. No. 5; *see also*, Rec. Doc. Nos. 1, 2, 4.

not advise him of his rights pursuant to *Boykin* or determine whether he understood the rights he was waiving, (b) the Trial Court failed to explain the nature of the charge of manslaughter, and (c) the Trial Court sentenced him without waiting the required three days under La. Code Crim. P. art. 873; (2) he received ineffective assistance of counsel when (a) counsel advised him to enter the guilty plea where there was insufficient evidence of his guilt, (b) did not cross-examine witnesses, and (c) failed to determine a viable defense of suicide or accidental death; and (3) he is factually and actually innocent.

The State filed a response in opposition to Farinas's petition conceding its timely filing and urging that Farinas has failed to exhaust several of his arguments and that one claim is in procedural default.[33]  In the alternative, the remaining, exhausted claims are without merit and do not entitle Farinas to federal habeas relief.

## III.   <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[34] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on August 20, 2013.[35]

---

[33]Rec. Doc. No. 14.

[34]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[35]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this Court filed Farinas's federal habeas petition on July 8, 2014, when the filing fee was received after several attempts to get Farinas to submit a filing or pauper application.  Farinas dated his signature on the petition on August 20, 2013, shortly before the original deficient petition was received and which is the earliest date appearing in the record on which he could have delivered

The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated above, the State concedes and the record demonstrates that Farinas's federal petition was timely filed. The record, however, does not support the State's procedural default defense related to the actual innocence claim. The default imposed upon that claim was addressed only by the state trial court. The Louisiana Fifth Circuit wholly rejected the Trial Court's ruling and, without ruling on the substance of his claims, granted Farinas's writ application which led to the out-of-time appeal. The claim was not reasserted by Farinas on later review which forms part of the State's defense of failure to exhaust. The record simply does not support a finding that the state courts procedurally barred this claim.

The record, however, supports the State's contention that Farinas's has failed to exhaust state court remedies as to all of his claims and arguments, including the actual innocence claims and one portion of his challenge to the constitutionality of the guilty plea itself. However, because his claims are without merit and otherwise do not entitle him to federal habeas relief, the Court will proceed to discuss the substance of the claims. 28 U.S.C. § 2254(b)(2).

---

the pleadings to prison officials for mailing to the Court. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his *pro se* petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

IV.     **Standards of a Merits Review**

   A.     **Standard under the AEDPA**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to, or involve[s] an unreasonable application of clearly established [f]ederal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it

11

can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See* 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

12

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

### B.      Standard for Claims With No State Court Merits Review

The AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts.  28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). To the extent petitioner's claims were not considered by (or exhausted in) the state appellate courts, this Court utilizes the pre-AEDPA *de novo* standards of review.  *Id*., at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also*, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

Therefore, the Court will consider *de novo* any claim not fully exhausted on the merits in the state courts.  The Court recognizes and has utilized the appropriate standard for its review of each of Farinas's claims even if the standard is not specifically reiterated in the following sections of the report.

### V.      Voluntary and Knowing Guilty Plea (Claim No. 1(a),(b))

Farinas argues that his guilty plea was not knowingly and voluntarily entered because the state trial court failed to properly advise him of his rights pursuant to *Boykin* or determine whether he understood the rights he was waiving.  He also complains that the state trial court failed to explain the nature of the charge of manslaughter to him before accepting the plea.

As outlined previously, Farinas first sought review of this claim in his first unsuccessful application for post-conviction relief in the state trial court.  The claim was eventually more fully

raised and addressed in his out-of-time appeal and on subsequent review of that ruling in the

Louisiana Supreme Court.  The Louisiana Fifth Circuit found that although a full review of his

constitutional rights was not done during the plea hearing, the discussions with the Trial Court

coupled with the clear written statements in the waiver of rights form signed by Farinas and his

counsel were adequate to assure that he was properly advised of his rights and made a knowing

waiver at the time of the plea.  The Louisiana Fifth Circuit also resolved that the circumstances of

the plea also confirmed that Farinas was on notice of the manslaughter charge to which he entered

for the negotiated plea.  This was the last reasoned state court opinion on the issue.

The validity of a guilty plea is a question of law, although historical facts are entitled to a

presumption of correctness.  *See Parke v. Raley*, 506 U.S. 20, 35 (1992) (citing *Marshall v.

Lonberger*, 459 U.S. 422, 431 (1983)); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir.

2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)); *Barnes v. Johnson*, 160

F.3d 218, 222 (5th Cir. 1988).  The Court must therefore determine if denial of relief was contrary

to, or an unreasonable application of, federal law.  As resolved by the state courts, the plea colloquy

and signed waiver of rights form were sufficient to support acceptance of the plea as knowing and

voluntary.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and

intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000) (citing *James v. Cain*, 56 F.3d

662, 666 (5th Cir. 1995)).  A plea therefore "is constitutionally valid only to the extent it is

'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady

v. United States*, 397 U.S. 742, 748 (1970)).  Thus, a prisoner generally may not "collaterally attack

a voluntary and intelligent" plea.  *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See Amaya*, 111 F.3d at 389. "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead . . . without being coerced to do so, the . . . plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

A plea qualifies as intelligently given when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "To be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequences.'" *Hernandez*, 234 F.3d at 255 (quoting *Boykin*, 395 U.S. at 244).

"The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990); *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir. 1996). A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes. *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir.), *cert. denied*, 474 U.S. 838 (1985); *Hernandez*, 234 F.3d at 256-57 (finding that with respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence).

Louisiana law follows these same directives in its statutory requirements under the provisions of La. Code Crim. P. art. 556.1 regarding guilty pleas to a felony.[36] Thus, Farinas's guilty plea is constitutionally valid if he understood the nature of the charge against him and the constitutional protections being waived and was aware of his sentence exposure. *See James*, 56 F.3d at 666 (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

As resolved by the state courts, the record reflects that Farinas, after being placed under oath, understood the proceedings, the waivers he made, the confession of guilt to the charges, and the negotiated sentence:[37]

> THE COURT:        Have you read the plea of guilty form and has it been explained to you by your attorney?
>
> MR. FARINAS:        Yes, sir.
>
> THE COURT:        You understand that you are withdrawing your plea of not guilty to second degree murder and entering a plea of guilty to manslaughter?
>
> MR. FARINAS:        Yes, sir.
>
> THE COURT:        Alright.  Do you understand that the maximum sentence you could receive is 40 years at hard labor?
>
> MR. FARINAS:        Yes, sir.

---

[36]For example, La. Code Crim. P. art. 556.1(A) provides in relevant part as follows:

A.        In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:

(1)        The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.  [. . .]

(3)        That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.

(4)        That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.

[37]St. Rec. Vol. 3 of 7, Plea Transcript, p. 4 *et seq.*, 6/19/06.

THE COURT:          Alright.  Do you understand that you have the right to a trial by jury; the privilege against self-incrimination; the right to testify if you so choose; and most importantly, the right to maintain a plea of not guilty.  Do you understand you have those rights?

MR. FARINAS:                    Yes, sir.

THE COURT:          Do you understand if you plead guilty, you're waiving or giving up those rights?

MR. FARINAS:          Yes, sir.

The Trial Court also questioned Farinas about his age and education and confirmed that he was not under the influence of drugs or alcohol.[38]  The Trial Court had the district attorney outline for Farinas what the State intended to prove if the matter went to trial, which including his killing of his wife with the specific intent to do so or to cause great bodily harm to her while acting in the heat of passion.[39]  Farinas acknowledged his understanding of the nature of the charge against him.[40]

When the Trial Court asked Farinas if he was "pleading guilty because you are, in fact, guilty," Farinas answered, "Yes, sir."[41]  Farinas also indicated his understanding that, pursuant to the plea agreement, he would be sentenced to thirty (30) years in prison at hard labor.[42]  The Trial Court asked Farinas if he wished to plead guilty or not guilty, and Farinas answered "Guilty."[43]

---

[38]*Id.*, p. 4.

[39]*Id.*, p. 6.

[40]*Id.*, pp. 6-7.

[41]*Id.*, p. 7.

[42]*Id.*

[43]*Id.*, pp. 7-8.

Farinas acknowledged that, prior to entering his plea of guilty, he read, initialed, and signed the plea and waiver of rights form.[44]  Farinas agreed in the colloquy and on the form that his counsel had fully explained each of the rights being waived by his plea.[45]  He also indicated he had fully discussed his case with counsel and that he was satisfied with his counsel's performance.  He again agreed on the form, as he did at the hearing, that he understood the nature of the charges against him and the possible penalties, including the possibility that the conviction could be used to enhance a later conviction.[46]

Contrary to Farinas's arguments, the record is eminently clear that the constitutional requirements for a knowing and voluntary plea were fully met.  Farinas knew he was pleading guilty to the lesser offense of manslaughter after having been charged with second degree murder and that he would receive a lighter sentence as part of the plea agreement.  He acknowledged before the Trial Court and on the form that he understood the nature of the manslaughter charge, the consequences of his plea, and the free waiver of his constitutional rights.  It also is quite compelling that Farinas greatly benefitted from his negotiated agreement to enter the plea of guilty to the lesser offense of manslaughter for which he would receive only a thirty (30) year sentence, less than the maximum sentence, when he faced life imprisonment if found guilty of second degree murder.

For the foregoing reasons, considering the record as a whole, Farinas's plea was knowingly and voluntarily entered with full protections required under Supreme Court precedent.  The denial

---

[44]St. Rec. Vol. 4 of 7, Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, 6/19/06.

[45]*Id.*, p. 1.

[46]*Id.*, pp. 2-3.

of relief by the state courts was not contrary to, or an unreasonable application of, federal law. Farinas is not entitled to relief on this issue.

## VI.    **Sentencing Delay (Claim No. 1(c))**

Farinas argues for the first time in his federal petition that the Trial Court erred when he was sentenced without waiting or waiving the required three day delay under La. Code Crim. P. art. 873. The claims presents a matter of Louisiana state law. However, federal habeas law is well settled that claims of error in the application of state law do not assert a claim cognizable in federal habeas proceedings. *Swarthout v. Cooke*, 562 U.S. 216, __, 131 S. Ct. 859, 861 (2011) (holding federal habeas review does not lie for errors of state law) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *Engle v. Isaac*, 456 U.S. 107, 119 (2011) ("Insofar as respondents simply challenge ... [the application of state] law, they allege no deprivation of federal rights and may not obtain habeas relief."); *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004). In the course of reviewing state criminal proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007); *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). More specifically, a state's failure to follow its own sentencing procedures is not reviewable by a federal habeas corpus court. *Joseph v. Butler*, 838 F.2d 786, 789 n.2 (5th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). For these reasons, Farinas's claim asserted under Louisiana law fails to state a cognizable claim for this Court to review.

Furthermore, a federal habeas court will only review the propriety of state court errors when the error caused the proceeding to violate due process such that the state criminal proceeding was rendered fundamentally unfair. *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37 (1941);

*Swarthout*, 131 S. Ct. at 861-62; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

Farinas has not presented a constitutional error or any other error by the state trial court in failing to wait the three days required under La. Code Crim. P. art. 873.  That provision by its very terms indicates that the three day sentencing delay does <u>not</u> apply to sentencing following a plea of guilty.  "If the defendant . . . pleads guilty, sentence may be imposed immediately."  La. Code Crim. P. art. 873.  With no error by the state court, Farinas has not pointed to a violation of his right to due process and fundamental fairness.  He is not entitled to federal habeas relief on this issue.

## VII.   <u>Effective Assistance of Counsel (Claim No. 2)</u>

Farinas argues that he received ineffective assistance from his counsel when counsel advised him to enter the guilty plea when the State had insufficient evidence to prove his guilt had the second degree murder charge gone to trial.  He contends that counsel failed to prepare himself to cross-examine the State's witness to raise reasonable doubt as to his role in Delinda's death.  He also contends that counsel failed to investigate other viable defenses related to the cause of death, such as suicide or accidental death.

Farinas unsuccessfully raised these issues on post-conviction review in the state trial court. The Louisiana Fifth Circuit provided the last reasoned decision on the issue finding the claim meritless under the standards set forth in *Strickland* and its progeny.  The court reviewed the testimony given by the investigating officer and the coroner which established a basis for Farinas's guilt and reiterated that Farinas entered a knowing and voluntary plea after admitting that he was pleading guilty because he was in fact guilty.  Based on this, the claim was meritless.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard for judging the performance of counsel when a defendant enters a plea of guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See* 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

Applying *Strickland* under *Hill* in the context of a plea, the deficiency prong is satisfied by a showing that "counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 687-88). "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 131 S. Ct. at 787 (citing *Strickland*, 466 U.S. at 689). "[I]t

is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).

To prove prejudice, the defendant must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). In the context of a guilty plea, "[i]n order to satisfy . . . [*Strickland*'s] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. Thus, conclusory allegations with no showing of effect on the proceedings do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles*, 556 U.S. at 123). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). In the instant case, Farinas failed to establish that his counsel's performance was objectively unreasonable or deficient under the circumstances of his case.

The evidence in possession of the State was summarized by the Louisiana Fifth Circuit on its direct appeal review based on the transcripts from the preliminary hearings held after indictment and before Farinas entered his guilty plea. Those same transcripts reflect that Farinas's counsel was well-prepared and did in fact challenge the State's evidence and witnesses on the same grounds raised by Farinas here. Specifically, he questioned the witnesses on the basis for formulating Farinas as the killer and on the possible alternative causes for Delinda's death.

At the hearing held on June 3, 2005, Dr. Ross testified that Delinda had physical findings of bruising, hemorrhaging, broken blood vessels, and scratched skin in and around the throat, mouth, and eyes, which she found to be indicative of manual strangulation.[47] She also determined that the pinkish foam oozing from Delinda's mouth and nose was indicative of drowning. She further

---

[47] St. Rec. Vol. 6 of 7, Hearing Transcript, pp. 23-27, 6/3/05.

testified, on questioning by defense counsel that, she could not rule out electrocution as a cause of death.  This was so due to the presence of the curling iron, which was plugged in and in the bathtub full of water.  However, because of the possible disbursement of the current in the water, there would not have been a focal burn point to positively confirm electrocution.[48]  She repeated, however, that her main concern was the external evidence of strangulation.

Counsel also asked Dr. Ross if the drowning could have occurred after the electrocution, and she indicated that to be one possibility.[49]  Counsel was also able to get Dr. Ross to admit that she could not rule-out that the bruising to the neck (the alleged evidence of strangulation) could have occurred up to hours before her death, although that was unlikely in her opinion.[50]  He also ascertained from her that at least part of her cause of death finding was based on the fact that she was told that Delinda was found with her face above water.  This led her to ultimately opine that Delinda was strangled and held under water, then staged in the tub with her face above water and the curling iron in her hand.[51]  Dr. Ross also stated that there were no other injuries to Delinda's body or hands that you would expect to find in a struggle or violent strangulation.[52]  Farinas's counsel even attempted to question the doctor's failure to collect evidence that Farinas and his wife had consensual sex before her death, and the questions were met with sustained objections.  Counsel also asked Dr. Ross whether she thought at any point that Delinda's death could have been accidental or something other than homicidal violence, but she answered in the negative.

---

[48]*Id.*, pp. 30-32.

[49]*Id.*, pp. 31-32.

[50]*Id.*, pp. 33-35.

[51]*Id.*, pp. 35-36.

[52]*Id.*, pp. 36-37.

The transcript is clear that Farinas's counsel was well prepared to question Dr. Ross about her findings and to challenge her personal opinion regarding the cause of death. Counsel attempted to establish through the questioning that the neck marks may have been unrelated to Delinda's death, since there was no fracture or tearing near the larynx, and that Delinda may have drowned after the electrocution rendered her unconscious. Clearly, counsel recognized and attempted to question the witness about this alternative cause of death. The fact that counsel's efforts were unsuccessful does not equate to deficient performance. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Furthermore, Farinas was present during the hearing when his counsel broached these subjects with Dr. Ross. He heard his counsel ask if Delinda's death could have been accidental or even suicidal. The doctor said no. He heard his counsel ask if the bruising could have occurred long before the drowning and electrocution. The doctor was doubtful. Farinas was there when his counsel suggested alternatives to Dr. Ross's opinion about the cause of death, and he heard Dr. Ross's reasoned responses rejecting those alternatives.

Thus, contrary to Farinas's arguments here, counsel knew about and explored these potential defenses to the cause of death. All of this occurred before Farinas entered his guilty plea, and would have factored into counsel's advice, and Farinas's decision, to enter the guilty plea to manslaughter instead of going to trial on the second degree murder charge. Farinas has not established that his counsel (or he) was unaware of the available defenses or challenges to Dr. Ross's cause of death. Having failed to establish that his counsel did not investigate the cause of death issue, he has failed to establish a deficiency in counsel's performance. This renders unavailing Farinas's conclusory assertion of prejudice that he would have gone to trial and not entered the plea.

At the June 16, 2005, hearing, the Trial Court heard the testimony of Sergeant Meunier as it related to Farinas's arrest and the probable cause for that arrest.[53]  Farinas's counsel questioned Sergeant Meunier about the determination that there was no forcible entry into the Farinas's home.[54] The Sergeant responded that he looked around when he got there, and he had no specific recollection of which of the other officers, who arrived hours earlier, he asked about the scene.  Upon further questioning, Sergeant Meunier also indicated that the curling iron was unplugged when he arrived at the scene; he did not know who actually unplugged it.[55]

Farinas's counsel continued to ask the Sergeant detailed questions about Robert Johnson's (Delinda's boyfriend) alibi for the night of Delinda's death.  The Sergeant felt as though he adequately confirmed Johnson's alibi.

Counsel also questioned the Sergeant about Farinas's claim that he had sex with Delinda on the night of her death.  The Sergeant agreed that this was inconsistent with what he later learned in his investigation and that he did report the information to the coroner.  The Sergeant conceded, however, that his conversation with Farinas occurred six weeks after the autopsy and the information was not conveyed to the coroner until after that conversation.[56]  He also indicated that his perception at the time of the incident, was that Delinda died as the result of an accidental electrocution.[57]

The Sergeant also testified on questioning by Farinas's counsel that Delinda's father and Robert Johnson, who was already accusing Farinas of murder, both were present at the scene with

---

[53]St. Rec. Vol. 6 of 7, Hearing Transcript, 6/16/05.

[54]*Id*., pp. 62-63.

[55]*Id*., pp. 63-64.

[56]*Id*., pp. 66-68.

[57]*Id*., p. 67, l. 29-20.

police on the morning of the discovery of her body.[58]   Counsel also ascertained from the Sergeant that no one in the home heard any argument between Farinas and Delinda other than Delinda's eight-year-old daughter, who said she looked out of her bedroom door without leaving her bed, and no gun was ever found.[59]   The Sergeant also testified that he obtained as much evidence and information as he could and about six weeks after the death, decided to interview Farinas only after he heard Farinas might be taking a trip.   After this, he investigated Farinas's alibi, that he went to work at 1:30 a.m., and it was rebutted by statements by Farinas's supervisors who stated that the business grounds were not accessible to anyone until the gates were opened between 6:15 a.m. and 7:00 a.m.[60]

The record contains ample effort by Farinas's counsel to challenge the arrest and the existence of any cause to arrest (and charge) Farinas.   He attempted to establish through the questions asked that there was no support for the assertion that Farinas fought with his wife, held a gun to her, or was present in the home when her death occurred or was discovered.   The fact that counsel's efforts were unsuccessful does not equate to deficient performance.   *See Martinez*, 99 F. App'x at 543 ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Counsel's actions, especially under the limitations of the probable cause hearing, were more than a reasonable effort to convince the state trial court of the lack of probable cause for the arrest and the charge against him.   More importantly, counsel's questions demonstrated a clear

---

[58]*Id.*, p. 68.

[59]*Id.*, p. 80.

[60]*Id.*, pp. 79-83.

understanding of the case and the recognition of available defenses to the probable cause and the charge. This understanding and information would have factored into counsel's advice to Farinas, and Farinas's decision, to enter the guilty plea to manslaughter instead of going to trial on the second degree murder charge.

Farinas has not established that his counsel failed to investigate or recognize the reasonable defenses to the probable cause for his arrest or the charge itself. Having failed to do so, he has failed to establish a deficiency in counsel's performance or any prejudice resulting from counsel's actions or advice. The state courts' denial of relief was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Farinas is not entitled to federal habeas relief on this issue.

## VIII.   Factual Innocence (Claim No. 3)

Farinas argues that he is entitled to relief from his plea because he is factually or actually innocent, claiming that there is no proof that he was the one who injured his wife. Farinas did not allow the state courts full review of this issue before raising it in his federal petition.

Nevertheless, Farinas has again failed to present a cognizable federal claim for this Court to review. The United States Supreme Court has not recognized actual innocence as an independent ground for federal habeas corpus relief. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1931 (2013)[61] (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013); *Burton v. Stephens*, 543 F. App'x 451, 458 (5th Cir. 2013) (citing *McQuiggin*, 133 S. Ct. at 1931 and *Herrera*, 506 U.S. at 400); *In re Warren*, 537 F. App'x 457 (5th Cir. 2013).

---

[61]In *McQuiggin*, the Supreme Court held that a prisoner filing his first federal habeas petition could overcome the one-year statute of limitations in § 2244(d)(1) upon a showing of "actual innocence." *Id.* at 1928. This is wholly inapplicable to Farinas's situation here.

Claims of actual innocence do not state a separate ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.  *In re Coleman*, 768 F.3d 367, 372 n.16 (5th Cir. 2014) (citing *Coleman*, 716 F.3d at 908); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

The Court has reviewed Farinas's constitutional challenges to his plea of guilty, which for the foregoing reasons was constitutionally sound.  He therefore has failed to present a viable claim of a constitutional violation that would warrant the added review of his actual innocence claim.

The Court also is compelled to note that Farinas does not specifically deny killing his wife. Instead, he contends that the State had no evidence at the time of his plea to prove that he was the killer, and the witnesses aligned with the State should not have been believed over his alibi defense. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 624 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Farinas presents no credible evidence of his factual innocence, and his argument alone is not proof of actual innocence as defined by the Supreme Court.[62]  Farinas therefore is not entitled to relief on this issue.

## IX.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Farinas's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[62]"[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[63]

New Orleans, Louisiana, this 29th day of December, 2014.

**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[63]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.